(No. 42403.—▮▮▮▮▮▮▮▮▮▮▮▮

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
ELLIS MONTGOMERY, Appellant.

*Opinion filed January 25, 1971.—Modified on denial of rehearing, March 31, 1971.*

WARD, J., took no part.

EARL L. WASHINGTON, (EDWARD M. MORRIS and R. EUGENE PINCHAM, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago,

(JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and GEORGE PAPPAS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In March of 1968 a jury in the circuit court of Cook County found the defendant, Ellis Montgomery, guilty of the unlawful sale of a narcotic drug, and he was sentenced to imprisonment for not less than 10 years nor more than 10 years and a day. On this direct appeal, the defendant argues: that the use of a prior conviction to impeach his credibility violated his sixth amendment right to counsel because the record of the conviction did not show that he was represented by counsel; that he was denied his right to a fair trial by the admission into evidence of a prior conviction not relevant to his credibility; and that the prosecutor's closing argument to the jury was prejudicial.

We find it unnecessary to consider all the issues raised by the defendant, for we are of the opinion that the 21-year-old prior conviction admitted into evidence bore no rational relationship to the defendant's present credibility, and should not have been admitted.

On November 14, 1966, Officer Kenneth Burt of the Chicago Police Department telephoned Ruth Bennett, who was then on probation by reason of a 1965 conviction for the unlawful possession of marijuana, and told her that certain charges filed against her in 1966, also for the unlawful possession of marijuana, would be dropped if she agreed to cooperate in arranging the arrest of her supplier. She agreed, and testified that she telephoned the defendant, whom she had known for one or two years, and asked him to sell her some marijuana. She said the defendant agreed to make the sale at 10 P.M. that same day, November 14, at his place of employment, the Melody Lane Tavern located at 42nd Place and Drexel Avenue in Chicago.

At approximately 9:20 P.M., Officer Burt, accompanied by Officer Leonard Lawrence, picked up Ruth Bennett and drove her to the Melody Lane Tavern. The officers searched her and gave her $20 in recorded money. She entered the tavern and returned to the officers' car a short time later, handing them two envelopes containing marijuana. She testified that the envelopes were given to her by the defendant, whom she described, in return for the $20.

The officers testified that they entered the tavern, and immediately recognized the defendant from the description. They asked him to empty his pockets, and when he did so they found the recorded money. The defendant was then placed under arrest.

The defendant testified that he was the night manager of the tavern, and that when Ruth Bennett entered the tavern she did not talk to him, but to the bartender. The defendant also testified that after the bartender talked to Ruth Bennett he gave the defendant $135 in cash, which included the $20 in recorded money, so that he could purchase some whiskey for the tavern. He also said that he had a list of the whiskey he was to purchase in his pocket along with the $135. The officers who arrested the defendant testified, on the other hand, that they could not recall the defendant having in his possession any money in addition to the $20, or any whiskey list. The bartender did not testify.

In order to impeach the defendant's credibility, the prosecution read into evidence a certified copy of a prior conviction of the defendant. The document read to the jury recited that the defendant had been convicted of robbery in 1947, which was 21 years before the trial of this case, when the defendant was 18 years of age. The defendant did not object when this evidence was offered, but in his motion for a new trial he contended that the conviction used to impeach his credibility was for an offense unrelated to credibility, and in any event was too remote in time to sup-

port an inference as to his present credibility. The trial judge regarded the absence of objection as unimportant, for he denied the post-trial motion on the ground that under the statute he had no discretion to exclude a prior conviction offered by the prosecution, saying: "As unfair as it is, in my opinion, to present a record against a man twenty years ago when he was a kid, I have to follow the law."

The applicable statute provides: "No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction *may* be shown for the purpose of affecting his credibility * * *." (Emphasis supplied.) (Ill. Rev. Stat. 1967, ch. 38, par. 155—1.) Relying primarily on *People* v. *Buford* (1947), 396 Ill. 158, the prosecution argues that the statute contains "no limitation as to the time of a prior conviction," and requires the trial judge to admit evidence of a prior conviction to impeach the credibility of a defendant whenever the prosecutor sees fit to offer it.

Our analysis of the correctness of this construction of the statute begins with a fundamental proposition of the law of evidence. "There is a principle—not so much a rule of evidence as a presupposition involved in the very conception of a rational system of evidence, as contrasted with the old formal and mechanical systems—which forbids receiving anything irrelevant, not logically probative." (1 Thayer, Preliminary Treatise on Evidence, 264 (1898).) In discussing the basic axiom, "None but facts having rational probative value are admissible", Wigmore says that "Among its innumerable indirect effects are to be noted the rules directed to prevent the jury from substituting passion and prejudice, instead of reasoning, as the foundation of their conclusion; and the doctrine that even the Legislature cannot establish a rule of decision which will deprive the Judiciary of its power to investigate the facts by rational

methods." 1 Wigmore on Evidence, sec. 9, (3rd Ed. 1940), p. 290.

In this case the prior conviction which was put before the jury had no tendency to show identity, motive or plan; it was not admissible to show the defendant's guilt. It came into this case only because the defendant took the witness stand to testify in his own defense. And its relevance must depend upon the assumption that one who was convicted of robbery more than 20 years before is for that reason more likely than one who was not so convicted to testify falsely today. We are aware of no factual or psychological support for such an inference.

On the other hand, the prejudicial effect of this evidence is unmistakable. As the trial judge in this case put it, "The defendant is a dead duck once he is on trial before a jury and you present a record that he was convicted * * * twenty-five years ago * * *. If it's any way close, the jury is going to hang him on that record, not on the evidence."

The customary safeguard against this danger is an instruction to the jury that the defendant's criminal record may be considered only as it bears upon the weight to be given to the defendant's testimony. The unstudied remarks of the trial judge reflect his disbelief in the effectiveness of that safeguard. That same disbelief was expressed in more scholarly terms by Dean Griswold: "We accept much self-deception on this. We say that the evidence of the prior conviction is admissible only to impeach the defendant's testimony, and not as evidence of the prior crimes themselves. Juries are solemnly instructed to this effect. Is there anyone who doubts what the effect of this evidence in fact is on the jury? If we know so clearly what we are actually doing, why do we pretend that we are not doing what we clearly are doing?" Griswold, The Long View (1965), 51 A.B.A.J. 1017, 1021. See also H. Kalven & H. Zeisel, The American Jury (1966), 124, 126-130, 144-146; Mc-

Cormick, Some High Lights of the Uniform Evidence Rules (1955), 33 Tex. L. Rev. 559, 568; Note, Procedural Protections of the Criminal Defendant—A Reevaluation of the Privilege Against Self Incrimination and the Rules Excluding Evidence of Propensity to Commit Crime (1964), 78 Harv. L. Rev. 426, 441; Note, Other Crimes Evidence at Trial: Of Balancing and Other Matters (1961), 70 Yale L.J. 763, 765, 777.

Our statute provides that a prior conviction "may" be shown to impeach credibility; it thus confers discretion either upon the prosecutor or upon the trial judge. To hold that the statute gives a prosecutor the absolute right to determine what evidence a court must admit against a defendant in a criminal case, regardless of its relevance, is to create unnecessary constitutional problems. The question is inherently judicial, and we believe that view is correct which places the discretion as to the admissibility of this kind of evidence in the judge rather than in the prosecutor. (See *Luck* v. *United States* (D.C. cir. 1965), 348 F.2d 763, 767-69; *Gordon* v. *United States* (D.C. cir. 1967), 383 F.2d 936, *cert. den.* (1968), 390 U.S. 1029, 20 L. Ed. 2d 287, 88 S. Ct. 1421.) Upon reconsideration of the statute we are satised that it does not mean that when a defendant testifies in his own behalf the trial court must admit prejudicial evidence that is not relevant simply because the prosecution chooses to offer it. Such an interpretation of the statute would not advance the objectives of a rational system of criminal justice, and would needlessly create constitutional difficulties for possible future exploitation. We are aware that not all courts are in agreement upon this issue. (See, *e.g.*, *State* v. *Hawthorne* (1967), 49 N.J. 130, 228 A. 2d 682; *State* v. *West* (1970), 285 Minn. 188, 173 N.W.2d 468; *Commonwealth* v. *West* (Mass. 1970), 258 N.E.2d 22.) As Chief Justice Weintraub stated in the *Hawthorne* case, "About a third of the jurisdictions have dealt with the problem, and they are about evenly divided." 228 A.2d at 682.

Both the American Law Institute and the Commissioners on Uniform State Laws have taken the position that when the accused takes the stand on his own behalf he should be subject to impeachment only by proof of past crimes which directly bear on testimonial deception (see A.L.I. Model Code of Evidence (1942), Rule 106(3); Uniform Rules of Evidence (1953), Rule 21, 9A Uniform Laws Annot. p. 607), and that past convictions not in this category should not be admissible unless they are relevant for some purpose other than impeachment. More recently, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States has approved the following rule relating to this problem:

"Rule 609. Impeachment by Evidence of Conviction of Crime

"(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere,* is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

"(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date.

"(c) Effect of Pardon, Annulment, or Certificate of Rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, and (2) the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on innocence.

"(d) Juvenile Adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. The judge may, however, allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the judge is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

"(e) Pendency of Appeal. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible." 51 F.R.D. 391.

The Advisory Committee's comments to this Rule contain the following:

"The most significant feature of the rule is the requirement that the evidence of conviction be excluded if the judge determines that its probative value is outweighed by the danger of unfair prejudice. It is a particularized application of Rule 403(a). The provision finds its genesis in *Luck* v. *United States,* 348 F.2d 763 (D.C. Cir. 1965). Prior to that decision, slight latitude was recognized for balancing probative value against prejudice, though some authority allowed or required the trial judge to exclude convictions remote in point of time. Referring to 14 D.C. Code § 305, the court said:

'It says, in effect, that the conviction "may," as opposed to "shall," be admitted; and we think the choice of words in this instance is significant. The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the

fear of prejudice founded upon a prior conviction. [Footnote omitted.] There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field. [Footnote omitted.]

'In exercising discretion in this respect, a number of factors might be relevant, such as the nature of the prior crimes, [footnote omitted] the length of the criminal record, the age and circumstances of the defendant, and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. The goal of a criminal trial is the disposition of the charge in accordance with the truth. The possibility of a rehearsal of the defendant's criminal record in a given case, especially if it means that the jury will be left without one version of the truth, may or may not contribute to that objective. The experienced trial judge has a sensitivity in this regard which normally can be relied upon to strike a reasonable balance between the interests of the defendant and of the public. We think Congress has left room for that discretion to operate.' 348 F.2d at 768.

"The application of *Luck* has been refined and clarified in numerous subsequent decisions of the court which rendered it, notably in *Gordon* v. *United States*, 383 F.2d 936 (D.C. Cir. 1967). Pointing out that *Luck* placed on the accused the burden of demonstrating that the prejudice from his prior convictions ' " far outweigh" the probative relevance to credibility' (p. 939), Judge, now Chief Justice, Burger suggested in *Gordon* various factors to be considered in making the determination: the nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged.

It will be noted that subdivision (b) of the rule imposes a specific time limit and that subdivision (c) deals with aspects of rehabilitation; these provisions should be construed only as imposing outer limits upon the judge's determination and not as restricting his decision within them." 51 F.R.D. 393.

In our opinion, the provisions of this Rule should be followed in future cases. The judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.