THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LELAND HARLAND, Defendant-Appellant.
Second District (1st Division)    No. 75-446

Opinion filed August 31, 1976.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko and G. Michael Prall, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:
The defendant, Leland Harland, was found guilty by a jury of the armed robbery of a Seven-Eleven store in Aurora, Illinois, and was sentenced to 4-5 years' imprisonment in the State Penitentiary.

In this appeal the defendant has raised two issues, the first being that the State did not rebut his alleged defense of compulsion. The other issue raised by the defendant is that he was not allowed to cross-examine one of the State's witnesses relative to that witness's prior conviction of robbery.

On the night of February 7, 1975, Bennie Avitia and Adelena Avitia, his wife, were shopping in the Seven-Eleven store in Aurora. The cashier of the store was Charles Prosapio. Both Mr. and Mrs. Avitia testified that

three masked men came into the store about 11:30 in the evening. One remained at the door entrance armed with a pistol and the other two men approached the cash register, one carrying a pistol (later identified as the defendant herein) and the other carried a rifle. The Avitias testified that the cashier, Prosapio, was taken to the back of the store for a few moments. Prosapio testified that one of the robbers sought to have him open the safe. Prosapio did not have the combination and they returned to the cash register where the money was taken from the cash register by the two robbers, one armed with a pistol and one with a rifle, and Prosapio was forced to lie on the floor. Money was taken as well as cigarettes and put into a cloth sack or pillowcase. The three men ran out of the store, two of them going in one direction and the defendant going in another direction.

Ronnie Loyall was driving a taxi toward the Seven-Eleven store. As he drove into the parking lot he saw two men run by wearing ski masks, one carrying a rifle and the other a pistol. As he drove along, a third party wearing a ski mask stood in front of the taxi and pointed a pistol at Loyall. Instead of stopping, the taxi driver ran over the masked man. Shortly thereafter the defendant was found on the ground with a ski mask between his legs, cigarettes strewn around his body, his pistol nearby and when he was placed in an ambulance, the pillowcase containing $271 from the store was found under his body. In other words, the defendant herein was in possession of the loot obtained from the Seven-Eleven store at the time he was run over by the taxicab.

The first contention of the defendant is that he was forced or compelled to participate in this armed robbery by the other two parties and that the State did not rebut this idea beyond a reasonable doubt. This is a rather novel argument, particularly in view of the facts of this particular case. The defendant took the stand and testified that he had been at a party, that on his way home he was met by one Patrick Benter and Ray Terry. His testimony, in substance, was that they forced him to go along, forced him to change his clothes, forced him to take the gun (the pistol which they furnished to him) and forced him to actively participate in the armed robbery of this store. He further testified that they approached the store from the rear by climbing over several fences and going through a backyard to get to the store. In rebuttal to defendant's testimony that he was compelled to participate in the armed robbery, Patrick Benter, one of the armed robbers, testified that he had been given probation for his participation and that the defendant was a willing participant and helped plan the crime. Defendant further testified that the loot in the pillowcase was thrown to him in the store and that explained his possession of the same. However, it is interesting to note that the other two robbers exited the store first, went to the right while the defendant, wearing a ski mask,

in possession of a pistol and in possession of the loot from the robbery, turned to the left. Not only did he turn to the left, he attempted to stop a taxi, as indicated above, by pointing a pistol at the windshield of the taxi and was stopped only when he was run over by the taxi. Quite frankly, this case turns upon the testimony of the defendant as being an unwilling participant in the robbery as opposed to the admitted facts in this case and the testimony of the other three parties in the store, as well as the rebuttal testimony of Patrick Benter, that the defendant was a willing participant in the offense.

■■ This court has repeatedly said, as has the Supreme Court of this State, that the determination of whether an affirmative defense has been established is within the province of the trier of fact, in this case the jury, and that that decision will not be disturbed unless the finding is so contrary to the evidence that a reasonable doubt of guilt remains. (*People v. Pearson* (1972), 4 Ill. App. 3d 462, 281 N.E.2d 422.) Defendant points out that there is some conflict in the testimony of the rebuttal witness, Patrick Benter, one of the armed robbers, and that there is some conflict between the testimony of Prosapio, the cashier, and the Avitias. Examination of the alleged conflicting evidence is not disturbing to this court as the defendant has testified in detail his participation in the offense with the other two parties and the only argument he has presented to this court is that he was forced to do it. We fail to see how any discrepancy or divergence of testimony as to the description or the participation of the parties herein would have any bearing on the compulsion supposedly inflicted upon this defendant by the other two parties. In summation, the defendant's affirmative defense of compulsion is somewhat incredible. His active participation in the offense admitted by him, the possession of the loot and his subsequent attempt to stop a taxi at gunpoint belie his affirmative defense. The jury was more than justified in granting more credence to the witnesses of the State than to the story of the defendant.

■■ The second argument raised by the defendant is that the trial court erred in not allowing the cross-examination of Prosapio, the cashier. Prosapio, upon taking the stand, testified that he was a convicted felon, that he was on a work-release program and was going to school. The court refused to allow the defense to cross-examine Prosapio as to the details of his conviction. In support of this refusal, the trial court relied upon *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, wherein the Supreme Court, in substance, adopted proposed Rule 609 of the Committee on Rules and Practices Procedure of the Judicial Conference of the United States for Federal Courts. At the outset it is to be noted that *Montgomery* dealt specifically with the impeachment of a defendant. The court in *Montgomery*, and in other cases, has, of course, differentiated between impeachment of a defendant and the safeguards

which should be set up to protect him as opposed to the testimony and impeachment of a witness, as is the case we have before us. We do not find that the trial court under the facts of this case abused its discretion in refusing to allow defense counsel to cross-examine the prosecution witness as to the details of the felony which he had committed. Examination of the testimony of the cashier Prosapio discloses that he did not identify the defendant as one of the robber participants in the crime. This court fails to see how the felony background of this witness would have any bearing whatsoever on his testimony nor can we in any way see that the defendant was prejudiced by Prosapio's testimony which, for all intents and purposes, was identical to that of the defendant from the time defendant entered the Seven-Eleven store until he left after participating in the armed robbery. One of the purposes of cross-examination of a witness who has been convicted of a felony is to determine whether that witness has a motive for testifying falsely. If Prosapio testified falsely, the defendant would be doing so as well, as defendant's testimony was substantially the same. Under the facts of this case the ruling of the trial court in refusing to allow cross-examination as to the details of the felony conviction of this witness was proper. We find no reversible error and the judgment of the trial court herein is accordingly affirmed.

Judgment affirmed.

SEIDENFELD and HALLETT, JJ., concur.