(No. 47830.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. ANTONIO DeHOYOS, Appellee.

*Opinion filed September 20, 1976.*

UNDERWOOD, RYAN and CREBS, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, and Laurence J. Bolon, Raymond J. Prosser, and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Lynn Sara Frackman, Assistant Defender, Office of State Appellate Defender, of Chicago, for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Antonio DeHoyos, indicted for the murder of Jose Pallares, was tried before a jury in the circuit court of Cook County, convicted of involuntary manslaughter, and sentenced to the penitentiary for not less than three nor more than nine years. The appellate court reversed and remanded for a new trial (31 Ill. App. 3d 12) and we allowed the People's petition for leave to appeal.

The facts are adequately stated in the appellate court opinion and need not be repeated. Pallares died as the result of a gunshot wound suffered at the apartment of his aunt, Mary Sanchez, where he was then living. Although there was a sharp conflict in the testimony concerning what occurred immediately prior to the shooting, it was not disputed that the fatal shot was fired from a pistol owned by defendant.

The appellate court reversed the judgment on the ground that the admission of the testimony of Frank Rogers, a rebuttal witness, concerning his prior conviction of a felony, was error so prejudicial to defendant as to require reversal. The People contend that the circuit court did not err in admitting the testimony and assuming, *arguendo*, that its admission was error, "it was harmless beyond a reasonable doubt under the facts of this case." Defendant contends that in admitting the testimony the circuit court improperly permitted the People to impeach its own witness and that the appellate court correctly reversed the judgment.

The shooting occurred on September 20, 1972, and defendant testified that he sought the advice of Frank Rogers "as to what I should do, in terms of, you know, the police and what not." He stated that with Rogers' knowledge and permission he stayed in his home from September 20 until he was arrested there on September 22, 1972. Called by the People in rebuttal, Rogers testified that the police had arrested defendant at his apartment

and had also placed him under arrest "For having him at my house, which I didn't know he was there." During Rogers' direct examination the following ensued:

> "Q. Mr. Rogers, have you been convicted of any crime?
>
> A. Who?
>
> Q. You.
>
> A. Yes. You have that on evidence.
>
> MR. ENGEL: Objection, he is trying to impeach his own witness.
>
> MR. KARAVIDAS: I have a right to bring that out.
>
> MR. ENGEL: Is he impeaching his own witness?
>
> THE COURT: Overruled.
>
> MR. KARAVIDAS: What were you convicted of?
>
> A. Narcotics. It is on the record.
>
> Q. It was for sale of narcotics?
>
> A. That is correct.
>
> Q. And how much time did you get for sale?
>
> A. Ten and a day.
>
> Q. How much time did you spend in the penitentiary under the ten and a day?
>
> A. Ten and a day.
>
> Q. How much time did you spend in the penitentiary?
>
> A. Ten and a day."

Although the parties and the appellate court have treated the question presented as involving "impeachment" of the People's rebuttal witness we do not so view it. This is an example of "the practice which permits the party who calls a witness with a criminal record to prove the record on direct examination." (3A Wigmore, Evidence sec. 900, at 667 n.1 (Chadbourn rev. ed. 1970).) It is not impeachment of one's own witness; on the contrary it is an anticipatory disclosure designed to reduce the prejudicial effect of the evidence on the witness' credibility. The evidence is admissible on the ground that "The proponent of a witness need not allow such information damaging to his credibility to be first established on cross-examination ***." *United States v. Mahler* (2d Cir. 1966), 363 F.2d 673, 678.

As we said in *People v. Montgomery,* 47 Ill. 2d 510, 514, the prejudicial effect of evidence of a defendant's prior convictions "is unmistakable." It is generally recognized that proof of a prosecution witness' prior convictions may also be prejudicial to the defendant, especially where there is evidence of past association between him and the witness. In *Loraine v. United States* (9th Cir. 1968), 396 F.2d 335, the court said: "It is usually proper and desirable that the Government should bring out on direct examination, at the trial, the criminal record of its witnesses or any circumstances tending to undermine their credibility, although, on objection of the accused, such evidence may be excluded on direct examination." (396 F.2d 335, 339.) In *United States v. Del Purgatorio* (2d Cir. 1969), 411 F.2d 84, the court said: "We have held, however, that the Government on direct examination may bring out information damaging to its witnesses' credibility, including evidence of their criminal records, provided the jury is cautioned that the testimony is not evidence of the defendant's guilt." 411 F.2d 84, 87.

Although the party calling him may in most instances offer proof of a witness' prior conviction, the admissibility of such proof, as with many other types of evidence, may depend upon whether its probative value outweighs its prejudicial effect to the defendant. (*People v. Lefler,* 38 Ill. 2d 216.) Assuming, *arguendo,* but not deciding, that there was a sufficient foundation for Rogers' testimony and that it was proper rebuttal, we nevertheless agree with the appellate court that in admitting the testimony concerning his prior conviction, the circuit court committed reversible error. The testimony was not limited to proof of a prior conviction; the People went much further. Rogers was asked, and testified, not only about his prior conviction but also concerning the sentence imposed and the fact that he served all of it. This testimony was improper and in view of defendant's testimony that he had sought Rogers' advice "as to what I should do, in terms of,

you know, the police and what not," its prejudicial effect far outweighed its probative value.

Because this case is remanded for a new trial we consider several contentions made by defendant in this court. He contends that the evidence failed to prove him guilty beyond a reasonable doubt. We do not agree. The jury was required to choose between conflicting versions of what had occurred and determine the credibility of the witnesses. Its verdict is adequately supported by the record.

We have also considered the arguments made concerning alleged errors in permitting defendant to be impeached by use of his testimony at a preliminary hearing, and the circuit court's refusal to give two tendered instructions. These contentions were considered and correctly rejected by the appellate court and need not be further discussed.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

I do not agree that admission of proof of Rogers' prior conviction was reversible error. Whether proof of that conviction is described as impeachment of one's own witness, or "anticipatory disclosure" as the majority opinion characterizes it, is largely a matter of semantics. The ultimate purpose of all trials is the ascertainment of truth from what is usually conflicting testimony. Vital to the integrity of that process is knowledge by the factfinder of matters affecting the credibility of the witnesses who testify. In my judgment no valid reason precludes presentation of those matters by the party who is aware of them, whether that be the party calling the witness or his adversary. Nor, if both parties are aware of those matters, is there any valid reason why their revelation should abide the opponent's decision whether to reveal them. The majority opinion permits proceeding in this fashion and with that view I am in complete accord.

I agree, too, that occasionally there may be circumstances where, on objection, the trial judge should limit or bar such testimony, or allow it only under a cautionary instruction because of the likelihood of prejudice to defendant. (*United States v. Freeman* (2d Cir. 1962), 302 F.2d 347, 350, *cert. denied* (1963), 375 U.S. 958, 11 L. Ed. 2d 316, 84 S. Ct. 448.) No such limiting instruction was requested here, and, while I do not condone the repetitious questioning of defendant regarding his conviction, I do not agree that such questioning was so prejudicial as to necessitate reversal in view of what I consider to be the clear proof of guilt.

Demonstration of the reasons I believe the conviction of involuntary manslaughter should stand requires a more detailed statement of the facts than is included in the majority opinion. Jose Pallares died of a gunshot wound in his head on September 20, 1972. He had arrived at the home of his aunt, Mary Sanchez, at approximately 10 p.m. on September 19. Four hours later defendant arrived, carrying a pistol in a brown paper bag. James Sanchez, Mary's eldest son, admitted defendant into the apartment, then went to watch television in another room. Ricardo Sanchez, 16, Pallares, 17, and defendant, 18, sat on a couch in the living room, where Ricardo's three younger brothers were asleep on the floor. Mary Sanchez was asleep in a bedroom.

Testimony about the shooting was conflicting. Ricardo Sanchez testified that defendant, while sitting on the couch, took the pistol from the paper bag, removed about three cartridges from the weapon, replaced one, spun the cylinder, put the gun to his head and "clicked it." The gun did not fire. Defendant next pointed the gun at Ricardo, who jumped off the couch and told him not to "fool around." Defendant then pointed the gun at Pallares, and Ricardo placed a wool blanket over his head. With the blanket in that position Ricardo heard two more "clicks." As he started to remove the blanket, but with it still over

his eyes, he heard a gunshot and saw a flash. When Ricardo completed pulling the blanket off his head immediately thereafter, he saw defendant with the gun in his hand. Ricardo testified he was standing two or three feet from the couch when the shot was fired, and never saw anyone other than the defendant holding the gun that evening. Ricardo also testified he had given and signed a statement at the police station on the night of the incident stating he had been in the bathroom at the time of the shooting, but that his statement that he had been in the bathroom was untrue and made because he was "scared," "nervous" and afraid of reprisals.

Mary Sanchez testified she awoke upon hearing the gunshot, and rushed into the living room where she saw the gun in defendant's hand. She stated that both Ricardo and defendant said Pallares had shot himself. Although Mrs. Sanchez urged defendant to wait for the police, he announced he was going to leave and told her to tell the police Pallares had been shot through the window. Defendant then left the building.

Augustine Sanchez, who had been sleeping on the living room floor, testified for the defense that he awoke upon hearing the shot and saw the gun lying on an end table. Defendant was standing near a dresser and said Pallares had shot himself. Augustine further testified he heard his brother Ricardo say he had been in the bathroom when the gun discharged.

Defendant testified that he had bought the gun a few days before the shooting to protect his mother and that he carried it with him at all times. After defendant arrived at the apartment Pallares asked to see the contents of the bag, so defendant handed the pistol to him. Pallares began to play with the hammer of the gun, pulling it back and letting it go. Defendant told him not to play with the gun, then grabbed the gun, first with one and then both hands, in an attempt to take it away; but the gun discharged, hitting Pallares. Defendant testified he did not know a

bullet was in the chamber at the time of the incident, and could not remember whether Pallares' finger was on the trigger. He stated that Ricardo was standing in the living room when the gun discharged, with a blanket over his head. Defendant also admitted it was possible he had told Mrs. Sanchez to tell the police that Pallares had been shot through the window.

Defendant further testified that after leaving the Sanchez apartment he threw the gun into a nearby vacant lot. Contrary to his testimony at the preliminary hearing, he also stated he returned soon afterwards and retrieved the gun, taking it to the home of Richard Bondie, who hid it. After defendant left Bondie's house he went first to his sister's home, and then to the home of Frank Rogers, where, defendant continued, he stayed with Rogers' permission until his arrest. The State established by other witnesses that the gun was later found by Bondie's mother and turned over to the police.

After the defense rested, the State called three rebuttal witnesses. A firearms expert testified the gun could not be fired without pulling the trigger nor, even then, if a person has both hands wrapped tightly around the cylinder. An investigating police officer testified he found no powder burns on Pallares' body, but agreed the wound could have been washed before his inspection. Finally, Rogers testified that although defendant was arrested in his home, Rogers did not know he was there. The State also, of course, elicited that Rogers had been convicted of a narcotics violation and had served the entire sentence.

On this record it is evident to me that defendant was proved guilty beyond a reasonable doubt, and the court's opinion so states. The verdict represents the jury's evaluation of conflicting versions of the shooting. Defendant emphasizes in this court Ricardo's blood relationship to the deceased, his prior inconsistent statement, the dimly lit living room, the wool blanket over his head, the testimony

of Ricardo's brother Augustine, and defendant's friendship with Pallares. Defendant ignores, however, that his own testimony places Ricardo in the living room as an occurrence witness, and that Ricardo's testimony about the gun in defendant's hand after the shooting was corroborated by Mrs. Sanchez. Moreover, there is uncontradicted evidence that defendant urged Mrs. Sanchez to lie to the police and say Pallares had been shot through the window, that he fled the scene of the shooting and hid for two days before he was arrested, and that he attempted, unsuccessfully, to prevent the discovery of his weapon.

Defendant was entitled to a fair trial, not a perfect one, and I believe judgments ought not to be reversed merely because error has been committed, unless it appears that justice has been denied thereby or that the verdict of the jury may have resulted from the error. (*People v. Wright* (1974), 56 Ill. 2d 523, 533-34; *People v. Cavanaugh* (1958), 13 Ill. 2d 491, 492.) Because I am convinced the verdict would have been the same had the State not brought Rogers' prior conviction to the attention of the jury in the manner it did, I would reverse the appellate court and affirm the trial court.

RYAN and CREBS, JJ., join in this dissent.