THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BOBBY HUMES, Defendant-Appellant.

First District (1st Division)   No. 78-265

Opinion filed November 5, 1979.

Edward Levett, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendant Bobby Humes was convicted of two counts of attempt murder (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(a)) and sentenced to concurrent terms of 2 to 6 years. Defendant appeals, contending that (1) the instructions on attempt murder were improper, (2) the trial court committed error in restricting the cross-examination of Ricardo Burns, and (3) defendant was not proved guilty of attempt murder beyond a reasonable doubt.

Complainant Ricardo Burns testified that about 2:45 p.m. on February 8, 1975, he was in a poolroom at 79th and Ada, in Chicago, which he had frequented for two years. He observed defendant in an altercation with two men and heard defendant tell them that he was not going to let any "punk m_____ f_____" run his poolroom. Defendant

repeated the phrase several times and then used it in reference to Burns, who objected. When defendant again addressed him in that manner, Burns threw the contents of a paper cup in defendant's direction. Defendant produced a pistol and Burns testified that defendant fired six times. The first shot missed, but the second went through Burns' arm. As Burns turned toward the door, he slipped and fell. While face down on the floor, Burns heard two to four more shots, the second of which struck him in the back. When Burns heard a click, indicating that the gun was empty, he got up and ran out the door. He was subsequently taken to the hospital, where a bullet in his upper shoulder area was removed.

Earl Hart testified he had arrived at the pool hall on the day in question at about 2:30 p.m. He noted that defendant was one of the people who broke up a fight between two young men. He heard defendant say, "You punks are in here trying to close my place down." Defendant and Burns exchanged words and, when defendant once again said, "You punks are not going to run my place," Burns threw the contents of a paper cup in defendant's direction. Defendant then pulled out a pistol and fired at Burns, but did not aim at this witness. However, Hart was hit in the leg with the first bullet, which apparently ricocheted. Hart heard two more shots and said there was a possibility that more shots were fired, but he could only recall hearing three shots. Hart then left through the front door and was taken to the hospital. The next day defendant came to his home, apologized for the incident and offered to pay his medical bill as well as for lost time from work.

Ralph Harris, who had previously known defendant, testified that he was in the pool hall at the time the shots were fired. He was playing pool and did not pay any attention to an argument that was going on in the front of the pool hall, except that at one point he called out for them to "cool it." Thereafter he heard the words "punk m_____ f_____" being spoken in a loud voice, and then he heard a gunshot. He saw defendant firing in Burns' direction, while Burns tried to get to the door. He did not see anything in Burns' hands. Harris also testified to hearing a total of three shots; at no time did he see Burns lying on the floor.

Defendant testified he had stopped a fight between two men and had pushed them out the door. Burns then told him that "his boys" could fight anywhere they pleased and that he and his friends could close defendant's place of business. Defendant replied, "That's all those punks want to do is come around and try to close people's places up but you are not going to close mine." Defendant stated that Burns referred to him as a "black m_____ f_____" and defendant then called Burns a "punk m_____ f_____." At that time Burns threw a cup of liquid in defendant's face and defendant fired at Burns two or three times. Burns came at defendant when he fired the first two shots, but then turned and went out the door;

he did not fall. Defendant denied that Burns was lying on the ground when he shot at him, and defendant asserted that Earl Hart was not in line with defendant's pistol.

Defendant first contends the instruction charging him with attempt murder was erroneous under the holding in *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, because it instructed the jury with respect to the alternative definitions of murder contained in section 9—1(a) (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)), which incorporate a state of mind other than an intent to kill. The State concedes that this instruction is improper; however, it contends that reversal is not mandated in this case because defendant waived the issue by failing to properly preserve it in the court below and that the error was harmless beyond a reasonable doubt.

■■ ■ During the conference on instructions, defense counsel had objected to the improper instruction, but apparently did so on the basis that there had been a previous instruction on the definition of murder. In his post-trial motion, defendant stated that the faulty instruction should not have been given because "murder was not involved in the instant case and said instruction was prejudicial to defendant." Defendant did not therefore specifically object to the instruction on the grounds set forth in *Harris*. Supreme Court Rule 451(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 451(b)) provides that the grounds for objections to instructions are to be "particularly specified." Because defendant did not challenge the contested instruction on the theory at trial which he now advances on review, he has waived consideration of the matter. (*People v. Turner* (1976), 35 Ill. App. 3d 550, 574, 342 N.E.2d 158; *People v. Walters* (1979), 69 Ill. App. 3d 906, 918, 387 N.E.2d 1230; see also *People v. Watson* (1979), 76 Ill. App. 3d 931, 395 N.E.2d 682.) In addition, the duty was on defendant to tender a proper instruction. *People v. Smith* (1978), 71 Ill. 2d 95, 104, 374 N.E.2d 472.

In *People v. Roberts* (1979), 75 Ill. 2d 1, 8, 387 N.E.2d 331, the court restricted the "plain error" exception to the waiver rule to very limited circumstances. It held that the inclusion of other mental states in the definitional instruction did not constitute "grave error" and it was not necessary to apply that exception to the waiver doctrine where the evidence was not closely balanced. In *People v. Camacho* (1979), 71 Ill. App. 3d 943, 953, 389 N.E.2d 1213, the court also held that a similar issue had been waived where the facts were not closely balanced and where defendant had objected to it at trial but did not raise the issue in his post-trial motion.

After reviewing the record, we do not believe the evidence in this case was closely balanced. In *People v. Seats* (1979), 68 Ill. App. 3d 889, 895, 386 N.E.2d 879, the court stated:

"The law is well settled that intent is a state of mind, and if not admitted it can be shown by surrounding circumstances, and intent

to take a life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. [Citations.] Specific intent to take a human life is a material element of the offense of attempt murder, but the very fact of firing a gun at a person supports the conclusion that the person doing so acted with the intent to kill."

██ █ In this case Burns testified that defendant shot at him six times and that two to four of the shots were fired as he was lying on the floor. If his testimony were believed, there is no question but that the intent to commit murder had been proved. (*People v. Tillman* (1977), 48 Ill. App. 3d 594, 363 N.E.2d 109.) Burns' testimony, however, was impeached with convictions for robbery and deceptive practices. Additionally, defendant, Hart and Harris all testified that only three shots were fired and that Burns was at no time lying on the floor. If this testimony is believed, the evidence from which it can be inferred that defendant intended to commit murder is somewhat lessened. Nevertheless, defendant did fire at Burns at least three times, hitting him twice, including once in the back as he attempted to get away. We find that the evidence of intent was not closely balanced. Under this circumstance, we conclude that the improper instruction was not reversible error.

██ Defendant also contends the conviction should be reversed because the court erroneously restricted cross-examination of Burns with respect to his convictions for robbery and deceptive practices. Here, the court permitted the State to elicit only that Burns had been convicted of those offenses. Defendant concedes that the trial court has broad discretion in limiting the scope of cross-examination (*People v. Montgomery* (1971), 47 Ill. 2d 510, 515, 268 N.E.2d 695), but he argues that the court abused its discretion in this instance. He contends that under the holdings in *Montgomery* and *Beaudine v. United States* (5th Cir. 1966), 368 F.2d 417, 421, he was entitled to inquire into the facts of where Burns had been convicted, the time and place of the criminal acts, the particular facts of the crimes, whether he had pleaded guilty or innocent to the charges, and the sentences imposed. Defendant asserts that all these factors have a bearing on Burns' credibility. Defendant suggests that no prejudice would result from further cross-examination and that, at most, Burns might suffer personal embarrassment. We note, however, that similar contentions have been rejected. In *People v. Upshire* (1978), 62 Ill. App. 3d 248, 252, 379 N.E.2d 38, and *People v. Harland* (1976), 41 Ill. App. 3d 355, 358, 354 N.E.2d 102, the respective courts held that it is within the discretion of the trial court whether to permit cross-examination regarding the details of a witness' prior conviction. In *Upshire*, the court held that where the prosecutor elicited only the date, crime and sentence from the witness, the trial court did not abuse its discretion. (Also see

*United States v. Zarattini* (7th Cir. 1977), 552 F.2d 753, *cert. denied* (1977), 431 U.S. 942, 53 L. Ed. 2d 262, 97 S. Ct. 2661.) We find that the trial court in this case did not abuse its discretion in limiting cross-examination in this regard.

■■ ■ Defendant contends he was not proved guilty of the offense of attempt murder beyond a reasonable doubt because there was no way to determine if the jury found he had the intent to kill or the intent to do great bodily harm. He argues he could not have formed the intent to kill just prior to the shooting. A review of the evidence shows that when defendant persisted in using the same epithet toward Burns which he had used with respect to the men who had been fighting, Burns threw a paper cup filled with water or a soft drink in defendant's direction. Defendant then fired at least three shots at Burns, striking him twice and striking Earl Hart once. It is well settled that the intent to commit murder can be inferred from the surrounding circumstances and the use of a deadly weapon. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 578, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209; *People v. Seats* (1979), 68 Ill. App. 3d 889, 895, 386 N.E.2d 879.) We believe the intent to kill was adequately shown in this case. We also find that the conviction of attempt murder with respect to Earl Hart must be upheld under the doctrine of transferred intent. *People v. Swaney* (1971), 2 Ill. App. 3d 857, 276 N.E.2d 346; *People v. Cohen* (1922), 305 Ill. 506, 512, 137 N.E. 511; *People v. Bollnow* (1928), 331 Ill. 434, 435-36, 163 N.E. 437.

The convictions and sentences are affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.