THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALBERT MARTIN, Defendant-Appellant.

Fourth District   No. 4—85—0614

Opinion filed May 15, 1986.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Peter C. Drummond, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted in the circuit court of Sangamon County of one count of residential burglary and two counts of attempt (residential burglary). On May 9, 1983, he was sentenced to 8 years' imprisonment. On direct appeal the convictions and sentence were affirmed by this court. *People v. Martin* (1984), 123 Ill. App. 3d 1159 (order under Supreme Court Rule 23).

Thereafter, defendant filed three post-conviction petitions (Ill. Rev. Stat. 1983, ch. 38, par. 122—1 *et seq.*). The first two were dismissed on motion of the State. The trial court ordered an evidentiary hearing on the third and, after that hearing, denied the relief sought, *i.e.*, a new trial. This appeal followed.

The gist of all three petitions was the same: defendant claimed that his trial counsel made use of a purported conviction for misdemeanor theft in the course of trial; that the person so convicted had the same name as defendant, but that the conviction was not that of defendant; and therefore counsel was incompetent.

The evidence taken at the post-conviction hearing essentially corroborated the factual allegations of the petition. Trial counsel testified that he had been furnished with the theft conviction by the prosecutor who indicated that he intended to use it as a means of impeaching defendant if he took the stand. Counsel also stated that his own investigation revealed a number of much more serious convictions of defendant, including attempt (murder) and robbery, which might have been introduced by the State within the rule of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. He concluded that these were either unknown to the State or, if known, that the State had decided not to attempt to introduce them. He further concluded, as a tactical matter, to use the misdemeanor theft conviction in his case in chief by having defendant admit that the conviction was his own, and then trust that the question of impeachment had been foreclosed.

The trial record shows that at the very beginning of defendant's direct testimony defense counsel asked the following question and received the following answer:

"Q. Albert, initially to get one matter out right away, would the record of Sangamon County reflect that on March 19, 1981, you would have been convicted of theft under $300 for stealing a bicycle?

A. The records show it."

There was no cross-examination on the point.

At the hearing on the post-conviction petition defense counsel at trial was called as a witness for defendant. On direct examination the matter of prior convictions for impeachment purposes was being pursued, and the following took place:

"Q. [Counsel on post-conviction] Do you remember what ones they said they were going to use for impeachment?

A. [Trial counsel] Yes. I believe simply one item that they had Albert Martin that had been charged with stealing a bicycle.

Q. Okay. Prior to that, I assume before this, you received this exhibit prior to the time that Mr. Albert Martin took the stand?

A. Oh, yes.

Q. Did you ever have any conversations with Mr. Martin with regards to those convictions?

A. I did.

Q. And what was that conversation?

A. I told Albert that to my surprise the only offense that

they have him listed as committing was the offense of stealing a bicycle. Albert indicated, 'That is not mine. I didn't steal the bicycle.' I said, 'I believe you, but you have done certain other things that I believe are much more severe than stealing a bicycle. We could do one of a couple of things. We can either admit or suggest that in fact that that is what the record would show in Sangamon County that you stole a bicycle at some juncture, either during direct examination or during cross-examination or we can ignore it and when the prosecution introduces that to impugn his credibility, we can either admit or deny that that is what the record was.' My view and I suggested to Albert was that if we deny that we stole the bicycle—we—he stole the bicycle that the prosecution would likely look further and come up with some rather more severe crimes that may impugn the integrity at the—more than the bicycle. Albert kept saying, 'I didn't steal the bicycle.' I said, 'I believe you, but I would rather leave the impression that that is your only crime than perhaps something more serious.'

Q. What did Mr. Martin say in regards to this?

A. Well, again, he said originally, 'I didn't steal the bicycle,' but he was willing to follow my advice or trial tactic, if you will."

Also, at the post-conviction hearing defendant testified on cross-examination as follows:

"Q. [Assistant State's Attorney] Did you ever state to Mr. Stone [Assistant State's Attorney at trial] that that misdemeanor theft conviction, the theft of a bicycle, was not your conviction?

A. Well, in a way, yes, I did. I didn't make the statement yes or no. I didn't, and he didn't further question me about it. I just said that is what the record shows."

Trial counsel made a further statement on cross-examination at the post-conviction hearing as follows:

"Q. [Assistant State's Attorney] When you were informed by Mr. Stone that he had a certified copy of a bicycle theft and that is all they had for impeachment, were you happy?

A. Elated.

Q. In the decision to use it, bring it out in direct, then you were aware that the State would not cross-examine him on it?

A. I had two reasons for bringing that out. One, it had been my experience we bring it out on direct examination, jurors tend to deal with that a little more positively. We're at-

tacking the problem head-on, and it is rare that the State does inquire about that particular item once we address it in direct. Further, I wanted the opportunity to again couch the question in my words as opposed to that that might be offered by Mr. Stone so as not to have Mr. Martin perjure himself or lie on the stand about what he was convicted of or not convicted of."

It is thus abundantly clear that defendant and his trial counsel deliberately perpetrated a fraud upon the court; counsel suborned perjury; and defendant committed perjury. This court will never countenance such machinations.

We find thoroughly apropos the statement of the Supreme Court in the recent case of *Nix v. Whiteside* (1986), 475 U.S. ____, ____, 89 L. Ed. 2d 123, 137, 106 S. Ct. 988, 996-97:

> "The essence of the brief *amicus* of the American Bar Association reviewing practices long accepted by ethical lawyers, is that under no circumstance may a lawyer either advocate or passively tolerate a client's giving false testimony. This, of course, is consistent with the governance of trial conduct in what we have long called 'a search for truth.' The suggestion sometimes made that 'a lawyer must believe his client not judge him' in no sense means a lawyer can honorably be a party to or in any way give aid to presenting known perjury."

In the instant case, trial counsel was not incompetent, as alleged by defendant. He was dishonest and dishonorable.

It remains to be decided what to do in this situation. Defendant should not be rewarded with a new trial. His complicity in this iniquitous scheme is apparent. Therefore, the order of the circuit court of Sangamon County denying post-conviction relief is affirmed. We suggest to the State's Attorney of Sangamon County that he investigate possible charges of perjury against defendant.

As to trial counsel, we direct that the clerk of this court forward a copy of this opinion upon its filing to the Attorney Registration and Disciplinary Commission for such action as that Commission may see fit to take.

Affirmed.

GREEN and MORTHLAND, JJ., concur.