THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RALPH PRUITT, Defendant-Appellant.

First District (5th Division)   No. 85—1591

Opinion filed January 15, 1988.

Steven Clark and Thomas Long, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Lynda A. Peters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Following a jury trial, defendant Ralph Pruitt was found guilty of armed robbery and unlawful restraint and was sentenced to 18 years' imprisonment for the armed robbery conviction and five years for unlawful restraint, the sentences to run concurrently. On appeal, defendant contends that: (1) he was not proved guilty of armed robbery and unlawful restraint beyond a reasonable doubt; (2) the trial court improperly admitted evidence of his prior convictions; (3) comments made by the State in its closing argument were so prejudicial as to deny him a fair trial; and (4) the trial court abused its discretion in sentencing him on both convictions.

We find it unnecessary to consider all the issues raised by defendant in light of our determination that the trial court abused its discretion in admitting into evidence defendant's prior convictions and in allowing the State to emphasize those convictions in its closing argument.

On December 30, 1983, according to complainant Astrid Compton, she left her home at approximately 9 p.m. to visit her fiance; prior to leaving, she had telephoned him to say that she would be stopping first to visit two close family friends whom she referred to as her "aunts." After alighting from a bus, she began to walk to the aunts' home located at 4856 South Prairie in Chicago. While walking down Prairie, she was approached by defendant, who asked her if he could escort her to where she was going. She refused his offer and hurried to her aunts' apartment building. Astrid did not mention this occurrence to her aunts and, after visiting with them for approximately one hour, she left the apartment, which was located on the second floor of the building, and found defendant in the vestibule area on the first floor. She walked past defendant and proceeded down Prairie toward the bus stop. While walking along Prairie, defendant grabbed her around her neck, held a knife to her throat, and pulled her down a gangway to the back of a house. Defendant told her he had just gotten out of the penitentiary and he wanted to take her to a hotel. He then demanded that she give him all her money. After giving him $12 or $13 and a pack of cigarettes, defendant put his knife away, held Astrid by her arm, and repeated that he was going to take her to a hotel. Astrid did not want to go to a hotel with defendant so she suggested that they return to her aunts' home.

Defendant then pulled Astrid by the arm down an alley and to a liquor store located nearby. The store resembled a currency exchange, *i.e.*, a clerk stood behind a partition, took defendant's order for one quart of beer and a pack of cigarettes, and retrieved the items and

gave them to defendant. Defendant then handed the bagged items to Astrid and paid the clerk with the money he had taken from Astrid. During this period of time defendant continued to hold Astrid with one hand.

Defendant and Astrid then went back to her aunts' apartment; only 20 minutes had elapsed between the time Astrid first left the apartment and her return. Astrid's Aunt Mary "buzzed" her in and opened the apartment door. Astrid introduced defendant as "a friend" because she did not know his name and they were invited into the den of the apartment so they could drink the beer at the bar located therein.

Astrid, after remaining in the den for awhile, left under the pretext of seeing her other aunt, who was in a bedroom in the rear of the apartment. When she got to the aunt's room, she removed her rings because she did not want defendant to steal them and then went to the kitchen and called the police; she dialed 911, gave her name and address, and stated that a man had put a knife to her throat, taken her money, and taken her to her aunts' home and she was afraid.

While Astrid was away from the den, defendant and her aunt discussed the weather and drank beer. After approximately 20 minutes had elapsed, defendant stated he "had to go." Mary got up to let defendant out and called to Astrid to notify her that defendant was leaving. At this point, Astrid came back toward the den and she, defendant and Mary met at the front door at the same time. When Mary opened the door, defendant walked past her. Simultaneously, two plainclothes police officers were standing at the door with their guns drawn. Astrid explained she was the one who telephoned the police and gave the officers the same information she had reported to the police over the telephone. Defendant was then placed under arrest and searched. The police recovered a knife, nine one-dollar bills, and a pack of cigarettes from defendant. Astrid accompanied the officers to the police station, where she discovered some dried blood on her throat, presumably from a nick caused by defendant's knife.

Defendant's version of the events contradicted Astrid's. Defendant stated that he met Astrid while in the vicinity of 47th and Prairie Streets, where he had gone "to party." After talking to Astrid, they exchanged names. He suggested that he was out to have a good time and asked Astrid to consider partying with him. Defendant had escorted Astrid for two blocks down Prairie when Astrid entered an apartment building. He followed her into the vestibule area, but Astrid did not ask him to wait for her while she was inside the building. After Astrid went up to the second floor, defendant remained in the vesti-

bule and, when Astrid did not return, he left the building and went to a liquor store two blocks away. Approximately 15 minutes later, defendant went back to the apartment building and walked into the vestibule area. Ten minutes later, Astrid came downstairs and entered the vestibule area. Defendant and she began talking and they left the building together. Subsequently, defendant suggested that they buy some beer and they went to a liquor store. At the store, defendant purchased one quart of beer and a pack of cigarettes from $17 or $18 which he had with him. Then, at Astrid's suggestion, they returned to her aunts' home to drink the beer.

Upon arriving at her aunts' apartment building, Astrid rang the bell and her Aunt Mary let them in. Defendant sat with Mary at a bar in the den while Astrid was in the rear of the apartment. He and Mary had been talking and drinking beer for approximately 15 to 20 minutes when Astrid's other aunt entered the den and stated that she did not like male company in the apartment at such a late hour. Defendant apologized and said he was going to leave. Mary then walked defendant to the front door and, when she opened it, defendant saw two men standing there with their guns drawn. One man asked defendant what he was doing there. Thereafter, Astrid appeared and stated that defendant had robbed her. The police then searched defendant and a knife and some money were taken from him. He was then taken to the police station.

At trial, in order to impeach defendant's credibility, the State made the following statement in rebuttal:

> "In evidence in the People's case in rebuttal we put forward this, that Ralph Pruitt also known as Ralph Carter under single information number 77 I 2255, the defendant having been fully advised of his rights and while represented by counsel, withdrew a plea of not guilty and entered a plea of guilty to rape, deviate sexual assault, armed robbery and aggravated kidnapping on June 27, 1978. And on June 27, 1978 judgment was entered on that conviction and the defendant was sentenced by the Honorable Frank J. Wilson to the Illinois Department of Correction for a term of six years to six years and one day plus five years parole on each count to run concurrently."

Defendant argues that the State, by revealing to the jury the sentence which he received for his prior convictions, violated the rule in *People v. DeHoyos* (1967), 64 Ill. 2d 128, 355 N.E.2d 19, where the court held, "relying on the principles" of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, that it was reversible error in impeaching a witness with his prior conviction to mention the length of his sentence

and the fact that he had served it at all. Defendant further contends that the prejudicial effect of admission of his prior convictions and the sentence he received was "magnified" by the State's subsequent comments concerning the prior convictions during closing argument. Specifically, the State commented:

"Well, Judge Crilly has another instruction for you which I would like to read. Evidence of a defendant's previous conviction of an offense may be considered by you only insofar as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged. Basically what that is saying is the fact that he is a convicted felon, the fact that he is a convicted rapist, armed robber, kidnaper [sic] and practitioner of deviate sexual assault—

* * *

[Y]ou should not consider that for the purpose of saying well he did it before therefore he must have done it. You can't use that. You can't use that conviction for that purpose, but you certainly can use that conviction—

* * *

But, ask yourselves this question, would a person who commits those kinds of crimes—

* * *

He swears to tell the truth. Does that mean anything to this man, an accomplished lier [sic]. A man like Ralph Pruitt lies for the sake of lying. He practices lies for the time that he needs them like right now."

Defendant argues that the State's introduction of his prior convictions and the above comments clearly invited the jury to use his prior convictions as substantive evidence against him and to inflame the passions of the jury.

In order to resolve this issue, it is necessary to reiterate certain principles articulated in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. In *Montgomery*, the issue before the court was whether the defendant's prior 21-year-old conviction for robbery was admissible for impeachment purposes where the defendant was charged with the unlawful sale of a narcotic drug. The *Montgomery* court held that the defendant's 21-year-old conviction bore no rational relationship to his present credibility and should not have been admitted. In resolving this issue, the court first noted that "when the accused takes the stand on his own behalf he should be subject to impeachment only by proof of past crimes which directly bear on testimonial deception [citations], and that past convictions not in this

category should not be admissible unless they are relevant for some purpose other than impeachment." (47 Ill. 2d at 516.) The *Montgomery* court further went on to state that even where a prior conviction is determined to bear upon a defendant's credibility, a trial court must exercise its discretion in admitting such evidence based upon whether it believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility.

Citing *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, where the defendant was charged with robbery and assault and the State sought to impeach him with his prior conviction for larceny, the *Montgomery* court also pointed out that the various factors to be considered in making a determination to admit evidence of prior convictions for impeachment purposes are "the nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged." (*Montgomery*, 47 Ill. 2d at 518.) In discussing the similarity of the prior conviction and the one the defendant is charged with, the *Gordon* court stated as follows:

> "A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the *inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'* As a general guide, those convictions which are for the same crime should be admitted sparingly ***." (Emphasis added.) (*Gordon*, 383 F.2d at 940.)

The *Gordon* court found that the defendant's larceny conviction was properly admitted because the verdict necessarily turned on how the jury resolved the credibility contest between the complainant and the defendant; the admissibility of the defendant's criminal record, along with the criminal record of the complaining witness, was properly received "because the case had narrowed to the credibility of two persons—the accused and his accuser—and in those circumstances there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed." *Gordon v. United States* (1967), 383 F.2d 936, 941.

■ Like *Gordon*, here the verdict necessarily turned on how the jury resolved the credibility contest between defendant and the complainant, Astrid Compton. At the same time, defendant's prior conviction for armed robbery was the same as the crime with which he was charged, the charge of unlawful restraint corresponded closely with his prior conviction for kidnapping, and, although he was not charged with

rape, his prior conviction for rape was substantially similar in nature to the threat of rape alleged under the facts recited by Astrid. We believe under the circumstances that admission of these prior convictions clearly created an inevitable pressure on the jurors to believe that if defendant committed these crimes before he probably did so this time, notwithstanding the State's admonishment to the contrary. In fact, we are of the opinion that by the State's admonishment to the jury, that defendant's prior convictions were only to be considered for impeachment purposes, the State caused the jury to focus its attention on the prior convictions and the probability that he had once again committed the crimes with which he was charged. In effect, admission of defendant's past convictions rose to the level of proof to show defendant's propensity to commit a crime (see *People v. Richardson* (1959), 17 Ill. 2d 253, 161 N.E.2d 268) or similar crimes, which is highly improper. The result was not only to conceivably inflame the jury's passions, but also to cause a search for the truth based upon defendant's prior convictions rather than solely on the facts of the case and the credibility of the witnesses. Accordingly, we hold that the prejudicial effect of admission of defendant's prior convictions discussed herein outweighed their probative value on the issue of defendant's credibility and it was reversible error for the trial court to admit them into evidence.

■ Next, for the purpose of clarification, we briefly note that the holding of *People v. DeHoyos* (1976), 64 Ill. 2d 128, 355 N.E.2d 19, renouncing admission of excessive facts concerning prior convictions of a witness, is not *per se* reversible error as defendant appears to suggest, nor is it applicable here where the complained-of admission of prior convictions pertained to defendant and not to a witness against defendant. Our courts differentiate between impeachment of a defendant and the safeguards which should be set up to protect him (see *People v. Madison* (1974), 56 Ill. 2d 476, 309 N.E.2d 11; *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695) as opposed to the testimony and impeachment of a witness (see *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402; *People v. Harland* (1976), 41 Ill. App. 3d 355, 354 N.E.2d 102). It is well settled that "[w]here a party to be impeached is not the defendant, but a witness, it is within the discretion of the trial court as to whether to permit cross-examination of the witness regarding the details of his prior convictions." (*People v. Upshire* (1978), 62 Ill. App. 3d 248, 252, 379 N.E.2d 38 (trial court did not abuse its discretion where only the date, crime and sentence were elicited from the witness); see also *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402 (trial court did not abuse its discretion in limiting cross-examination of witness to facts that witness had committed mul-

tiple felonies, was denied parole three times, and was transferred out of Stateville after cooperating with the State); see generally *People v. Humes* (1979), 78 Ill. App. 3d 255, 397 N.E.2d 130; *People v. Harland* (1976), 41 Ill. App. 3d 355, 354 N.E.2d 102.) *DeHoyos* is merely one instance where the trial court was found to have abused its discretion in allowing a witness, not the defendant, to be improperly cross-examined concerning the details of his prior conviction based upon the specific facts of that case as they unfolded. Finally, although it is improper to indicate the sentence received by a defendant for a prior conviction, since it is obviously immaterial to the question of a defendant's credibility, defendant has failed to show how he was prejudiced by this statement except to argue, as previously discussed, that it was *per se* reversible error based upon *DeHoyos*, which we have found inapplicable. Accordingly, we hold this error harmless.

■ With respect to defendant's argument that the five-year sentence imposed for his conviction for unlawful restraint is improper, we agree, and the State so concedes. A court can sentence a defendant for a term in excess of the statutory maximum under the extended-term statute only for the class of the most serious offense of which the offender is convicted (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2). Unlawful restraint is a Class 4 felony and provides for a sentence of not less than one year or more than three years (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(7)). Since defendant's armed robbery conviction is the more serious offense in this case, the trial court erroneously sentenced defendant to a term in excess of the maximum on this lesser serious offense. This error, however, may be rectified upon retrial.

■ Finally, it is our opinion that the evidence at trial was sufficient for the trier of fact to conclude that defendant was guilty beyond a reasonable doubt. This does not mean we are making a finding as to defendant's guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendant to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LORENZ, P.J., and PINCHAM, J., concur.