THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID GROVER *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 77-1850

Opinion filed April 24, 1979.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

After a jury trial defendants, David Grover and Lawrence Harris, were found guilty of three counts of armed robbery. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2.) Grover was sentenced to a prison term of four to six years, and Harris was sentenced to a term of five to eight years. Defendants appeal.

The sole issue presented for review is whether the trial court abused its discretion in excluding the use of a prior conviction of a State's witness for purposes of impeachment.

We reverse.

On September 17, 1975, Lonnie Douglas, Robert Robinson and Earl Phillips were robbed by two men and several youths in front of a house at 4765 South Shields, Chicago, Illinois. Approximately five minutes after the robbery, defendants were arrested in an alley behind 4765 South Shields and subsequently charged with three counts of armed robbery. The following evidence was adduced at trial.

Lonnie Douglas testified that on September 17, 1975, he was employed by Earl Phillips and sold meat door-to-door. At approximately 4 p.m. Douglas was working with Phillips and Robert Robinson in the 4700 block of South Shields. The refrigerated truck in which the meat was stored was parked in front of 4765 Shields. After working down the block, Douglas, Phillips and Robinson returned to the truck and were ready to move to another block when a woman at 4765 Shields called to the men. Robinson went to talk to the woman while Douglas and Phillips remained in the truck. Douglas observed that the woman was pregnant and that during the conversation she kept looking up and down the street. Robinson returned to the truck, and Phillips was about to drive away

when a young man, identified in court as defendant Harris, put a pistol through the open window on the passenger side of the truck and ordered the men to get out of the truck. Robinson and Douglas got out of the truck on the passenger side, while Phillips got out on the driver's side and came around to the passenger side accompanied by defendant Grover. All three men were ordered by Harris to stand up against the truck. Harris stood near the sidewalk and pointed a gun at the three men throughout the incident. Douglas observed four youths approximately 12 to 14 years old; one of the youths took a dollar from Douglas' pocket and $20 from Robinson's pocket. Harris then told Phillips to give Grover the keys to the truck, and the back of the truck was opened. Douglas observed the youths taking boxes of meat from the truck and running down the street with them. Douglas also observed Grover take boxes of meat and run down the street; Grover then returned, took more boxes and ran away. Approximately five minutes later Harris ordered Douglas, Phillips and Robinson to get into the truck and drive away. Phillips drove about two blocks and then stopped when they saw a police car. Phillips told the officers what had happened and approximately four minutes later three detectives arrived and showed the victims five photographs; no identification was made and neither defendant was depicted in the photographs.

Douglas testified that he accompanied the three detectives in an unmarked police car. They went to an alley east of 4700 Shields, and Douglas observed defendant Harris in the alley talking to the same woman whom Robinson had talked to at 4765 Shields. When Harris and the woman saw the car, the woman ran into the house at 4765 Shields, and Harris leaped over a fence and ran through a vacant lot. One detective yelled at Harris to halt and then fired one shot, while the other two detectives chased Harris. Douglas remained in the alley with one of the detectives, and while there he observed empty meat boxes scattered throughout the alley and in garbage cans behind 4765 Shields. Douglas did not observe Harris with any meat.

Earl Phillips testified substantially to the same facts as Douglas. Phillips made in-court identifications of Harris as the person with the gun and of Grover as the person who took boxes of meat from the truck. Phillips testified further that Harris told him to turn over his money, and Phillips gave Harris approximately $160 and $100 in food stamps. Phillips testified that after the incident, he went in a marked police car with some uniformed police officers, and they drove to the alley behind 4700 Shields. Phillips observed Harris being chased and apprehended by detectives, and he observed police officers accompany Grover out of the house at 4765 Shields.

Chicago police officer Joseph Kirchens testified that on September

17, 1975, at approximately 4:15 p.m. he went to 47th and Shields with his two partners, Frank Sadler and Dale Riordan. Kirchens had a conversation with Douglas, Robinson and Phillips and showed them five photographs. No identification was made. Kirchens, his partners and Douglas then got into an unmarked police car and drove toward an alley behind 4700 Shields to look for the suspects. Officer Riordan was driving approximately five miles per hour down the alley when Douglas pointed out Harris, who was in the alley with a woman, as one of the suspects. The woman ran into a house at 4765 Shields, and Harris jumped over a fence and ran through a vacant lot. Kirchens observed a gun in Harris' hand, Kirchens yelled at Harris to halt, and when Harris kept running, Kirchens fired one shot. Sadler and Riordan chased Harris and apprehended him. Harris was brought back to the alley and placed in a police car. While Kirchens was in the alley, he observed some meat boxes in the alley and in garbage cans near the alley. However, his police report did not indicate that any meat or meat boxes were observed in the alley. Kirchens and several other officers then went into the house at 4765 Shields and spoke to Harris' mother. The officers searched the first floor and the basement of the house and found Grover in the basement. Grover was brought outside and placed under arrest. Kirchens did not observe any meat or meat boxes in the house.

Chicago police officer Frank Sadler testified that when defendant Harris ran from the alley, he and Riordan chased Harris and found him under the porch of a house on the 4700 block of Princeton. Princeton Street is one block east of Shields. Sadler and Riordan arrested Harris and searched him. They did not find any money or a weapon on Harris. Approximately six officers and Sadler searched for a weapon along Princeton Street and in the alley for five minutes, but no weapon was recovered.

It was stipulated that Harris was 24 years old and Grover was 20 years old at the time of trial. The court granted a motion in limine filed by defendants to preclude the State from introducing any prior convictions of defendants in the event that defendants testified. The court also granted a motion in limine filed by the State to preclude use of Douglas' criminal record for purposes of impeachment.

Madeline Harris testified that she resided at 4765 South Shields and that defendant Harris is her brother and defendant Grover is her cousin. On September 17, 1975, Ms. Harris was walking in an alley behind her house with her brother on her way to the bus stop when a car came down the alley at a high rate of speed. The car stopped and a man got out and fired a shot. Her brother ran and she stood in the alley. Another man came up to her and stated that she was under arrest because she had "set up a meat man." Then three men came into the alley and told police that she

was not the one, so police let her go. Ms. Harris testified that prior to being in the alley she did not talk to a man selling meat; however, she observed her aunt talking at the front door to a man, and she subsequently saw the same man in the alley after police arrived. Ms. Harris testified that her aunt was not pregnant but that she had a large stomach. Ms. Harris did not see any meat or meat boxes in the garbage cans around her house. Ms. Harris testified that her brother did not have anything in his hands when he was in the alley.

Lawrence Harris testified that he resided at 4765 South Shields with his mother, brother, sister and cousin. On September 17, 1975, Parris was walking in the alley with his sister intending to go to his girl friend's house. A car, travelling at approximately 35 miles per hour, came down the alley and Harris heard a shot. Harris did not hear anyone say anything before the shot was fired. Harris heard a second shot, and he ran and hid under a porch. A man then came to the porch and told him to get out. The man did not say anything, but he placed handcuffs on Harris' hands, took Harris back to the alley and put him in a police car. Harris testified that on the day in question he had been at home all day watching television and listening to records. Harris did not see a meat truck in front of his house, and he did not go out with a gun and rob anyone.

David Grover testified that he resided in the basement apartment at 4765 South Shields. On September 17, 1975, Grover went to bed at approximately 7 a.m. after working on a television set all night, and he had been sleeping when some police officers came in and asked him to show them out the back door. Grover walked out with the officers and was then placed under arrest. Grover did not see a meat truck and had not been on the street in front of his house on the day in question. Grover did not see any meat or meat boxes in the garbage cans near the alley.

Based on the foregoing evidence the jury found Grover and Harris guilty of three counts of armed robbery.

Defendants contend that the trial court erred in granting the State's motion in limine and in precluding defendants from introducing Douglas' criminal record for purposes of impeachment. The court precluded use of a conviction for manslaughter six years prior, stating that manslaughter was a crime of passion and did not bear on the witness' propensity to lie. Defendants argue that under the standards pronounced in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the manslaughter conviction was probative of the witness' credibility and was therefore admissible.

■■ ■ Under the general rule set forth in *Montgomery*, the credibility of a witness may be impeached by evidence of a prior conviction, except a plea of *nolo contendere*, if such crime: (1) was punishable by death or imprisonment in excess of one year, or (2) involved dishonesty

or a false statement regardless of punishment, unless (3) in either case, the conviction or release of such witness, whichever occurred later, was more than 10 years prior to his testimony, or unless (4) in either case the trial court determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. (47 Ill. 2d 510, 516.) It is clear from *Montgomery* that any conviction that is punishable by imprisonment in excess of one year is probative of a witness' credibility. (See *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 589, 363 N.E.2d 805.) The trial court has discretion to exclude evidence of such conviction only after applying the balancing test set forth in *Montgomery*, that is, weighing the probative value of the conviction against the danger of unfair prejudice.

■ In our opinion the record in the case at bar indicates that the trial court did not accord proper weight to the manslaughter conviction of the witness, Douglas. A conviction for manslaughter is punishable by imprisonment in excess of one year. (Ill. Rev. Stat. 1975, ch. 38, pars. 9—2, 9—3.) The record indicates that Douglas had pleaded guilty to a charge of manslaughter and was sentenced to five years probation and six months in county jail. We believe that the sentence prescribed by statute, and not the actual sentence imposed by the court, is determinative of whether a conviction is admissible under the first criteria of *Montgomery*. We interpret the language *"bears* a sentence of over one year," which is used in *Knowles*, as having the same meaning as the language in *Montgomery*, *"punishable by * * ** imprisonment in excess of one year." (Emphasis added.) Therefore, Douglas' conviction was probative of his credibility. The court, in failing to implement the balancing test prescribed by *Montgomery* and in ruling, absent such implementation, that the conviction had no probative value, was in error. Thus, we find that the trial court abused its discretion in excluding the manslaughter conviction for purposes of impeachment.

Based on the foregoing we reverse the judgment of the circuit court and remand the case for a new trial.

Reversed and remanded.

DOWNING and HARTMAN, JJ., concur.