2020 IL App (1st) 181354-U

No. 1-18-1354

Order filed October 13, 2020.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 16615 |
| | ) | |
| RONALD YBARRA, | ) | The Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm defendant's conviction for aggravated fleeing and attempting to elude a peace officer over his contention the State failed to prove his guilt beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Ronald Ybarra was found guilty of two counts of aggravated fleeing and attempting to elude a peace officer (aggravated fleeing and eluding) in violation of section 11-204.1(a)(4) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-204.1(a)(4) (West 2016)), one of which included an allegation that he was to be sentenced as a Class 3 offender

based on a previous conviction (count I) and one which did not (count III). The trial court merged count III into count I and sentenced defendant to an extended term of 6½ years' imprisonment. On appeal, defendant challenges the sufficiency of the evidence to sustain his conviction. We affirm.

¶ 3 The State charged defendant by information with four counts of aggravated fleeing and eluding, alleging that, on October 28, 2016, he willfully failed or refused to obey visual or audible signals by a police officer to stop his vehicle and fled or attempted to elude the police officer. In counts I and III, the State alleged that defendant disobeyed two or more official traffic control devices while fleeing. In counts II and IV, the State alleged that defendant caused property damage in excess of $300 while fleeing. Counts I and II also alleged that defendant was to be sentenced as a Class 3 offender based on his previous conviction for aggravated fleeing and eluding (625 ILCS 5/11-204.1(b) (West 2016)).

¶ 4 Before trial, the State filed a motion to permit proof of other crimes, in which it sought to introduce evidence of two prior instances in which defendant fled in his vehicle from the police. After hearing arguments from the parties, the trial court granted the State's motion, finding defendant's prior conduct was admissible on the issues of identity, motive, and absence of mistake.

¶ 5 At trial, Officer Piotr Czarniecki testified that, on October 24, 2016, he initiated a traffic stop on a "greenish" Volkswagen Passat with no front license plate and a distinctive bike rack on the back. As Czarniecki did so, the vehicle "took off."

¶ 6 Around 10 a.m. on October 28, 2016, he saw the Passat near Concord Place and Leclair Avenue but "lost [it] in one of the alleys" and was unable to stop it. Shortly before 11 a.m., Czarniecki, who was in a marked police vehicle and dressed in his uniform, was parked on North Avenue east of Keating Avenue, facing east. There, he observed the Passat parked facing north on

Keating just south of its intersection with North. Czarniecki called for assistance and then observed a man, who he identified in open court as defendant, approach the Passat.

¶ 7    Sergeant Timothy Dineen and Officer Martin Lopez arrived on scene, at which time Czarniecki saw defendant enter the Passat. While outside his vehicle, he told Dineen the Passat was the car that had previously fled. Czarniecki ran back to his vehicle, turned it around, and drove to Keating and North, where he, Dineen, and Lopez attempted to initiate a traffic stop on the Passat. The officers pulled in front of the Passat and activated their lights and sirens.[1]

¶ 8    Defendant drove the Passat around the police vehicles, across North, and north on Keating. Defendant made a left turn into an alley, followed by Officers David Chaplin and Mark Kushiner in an unmarked police vehicle. Czarniecki positioned his vehicle at North and Cicero Avenue, with his lights and sirens still activated, and next saw the Passat drive south on the wrong side of Cicero across North and continue on Cicero. When the Passat crossed North, it had a red light. Czarniecki followed defendant, who drove through a second red light at Hirsch Street.

¶ 9    As Czarniecki approached the intersection of Cicero and Division Street, he heard a crash at the intersection. He continued to the intersection, where he saw the Passat had collided with a Subaru Crosstrek. He also saw defendant fleeing on foot. Czarniecki, exited his vehicle, jumped into the Passat, which was still moving, and stopped it before it hit a brick wall. By that time, Lopez was on scene and apprehended defendant.

---

[1] Czarniecki testified he and Dineen activated their lights and sirens but could not remember if Lopez also did so.

¶ 10    On cross-examination, Czarniecki confirmed that the Passat ran two red lights, one at North and the other at Hirsch. Czarniecki issued defendant seven traffic tickets but, despite the fact defendant ran two red lights, Czarniecki issued only one for failing to stop at a red light.

¶ 11    Officer Martin Lopez testified he was driving his marked squad car and wearing his uniform when he responded to a call for assistance from Czarniecki at Keating and North Avenue. There, he saw Czarniecki's squad car in the middle of North just east of Keating, facing east. Lopez drove his squad car behind Czarniecki's and observed Czarniecki, who was outside his vehicle, speaking to Dineen.

¶ 12    Dineen pulled away and Czarniecki "motioned that the [Passat] was behind [them]." Lopez made a three-point turn and drove west on North toward Keating. He observed the Passat driving north on Keating. Dineen positioned his police vehicle in front of the Passat, and Lopez also positioned his vehicle in front of the Passat with his lights and sirens activated.

¶ 13    The Passat "took right off eastbound," turned left onto Keating heading north, and turned left into the alley north of North heading west. Lopez drove west and took a right turn to head north on Cicero, attempting to "cut off" the Passat at the alley. As Lopez reached the mouth of the alley, he saw the Passat come out of the alley, make a "quick[,] sharp" left turn, and continue south on Cicero. Lopez turned around, drove south on Cicero, and, near the intersection with Hirsch, heard a crash. He continued on Cicero and saw a traffic crash at its intersection with Division. He turned left onto Division and saw a man, who he identified in open court as defendant, running to the sidewalk. Lopez drove up to defendant and placed him into custody.

¶ 14    On cross-examination, Lopez testified he lost sight of the Passat in the alley north of North and after he saw it turn out of the alley. The next time he saw the Passat was after the accident

occurred at Division. He did not see defendant exit the Passat but ordered defendant to the ground when he saw defendant running from the street to the sidewalk. Defendant complied with his request, and was arrested.

¶ 15    Chaplin testified he was riding with Kushiner in an unmarked Chicago police vehicle when they received a call for assistance from Czarniecki. Kushiner drove east off Cicero onto North and, as they approached Keating, they received a radio transmission that the Passat was "taking off." Chaplin observed the Passat traveling north on Keating and Kushiner pursued it. Kushiner turned north onto Keating, and Chaplin briefly lost sight of the vehicle. As they approached the mouth of the alley just north of North, Chaplin saw the Passat traveling west down an alley. The officers followed the Passat through the alley with their lights and sirens activated.

¶ 16    The Passat made a left turn out of the alley onto Cicero, heading south, and disregarded a red light at North. The officers continued their pursuit but permitted the marked vehicles driven by Czarniecki and Lopez to lead the pursuit.

¶ 17    Lopez's vehicle was equipped with an in-car video-recording device, which was operating at the time and recorded parts of the initial attempt to stop defendant and ensuing chase. Lopez authenticated the recording during his testimony, and it was admitted into evidence and published to the court. Our review of the recording shows it is consistent with the State's witnesses' account of the occurrence. We note the video depicts three traffic lights on defendant's path of travel as described by the officers at trial, which are located at Cicero and its intersections with North, Hirsch, and Division. We also note that those traffic lights control traffic at those intersections.

¶ 18    Manuel Villarreal testified that, around 11 a.m. on October 28, 2016, he and his son were in his Subaru Crosstrek, driving west on Division Street at its intersection with Cicero, where he

intended to turn south onto Cicero Avenue. Villarreal heard screeching tires and observed a car turning east from Cicero, heading directly at him. At the time, he did not hear police sirens or see police vehicles. Villarreal veered to his left to avoid a collision, but the car sideswiped his, causing his to spin "about a quarter turn." Villarreal immediately exited his vehicle and checked on his son, who was restrained in a child seat on the rear passenger side of his vehicle.

¶ 19    Villarreal then saw marked squad cars driven by uniformed police officers arriving on scene and a person, who he identified in open court as defendant, running across the street. A squad car drove next to defendant and an officer apprehended him.

¶ 20    The State showed Villarreal footage from a surveillance camera that was positioned near the intersection, and Villarreal testified the footage accurately represented the events that day. The surveillance footage was admitted into evidence and published. Our review of the footage shows Villarreal's account of the collision is accurate and also shows an individual running away from the collision toward a fire hydrant on the sidewalk, which is some distance from where the collision occurred.

¶ 21    Defendant testified that, around 11 a.m., he drove his dark gray Volkswagen Passat from his friend's body shop to a corner grocery store on North and Keating and went inside to buy a pack of cigarettes. He left the store and intended to drive to a medical appointment.

¶ 22    Defendant planned to take a left from Keating onto North but saw a marked police vehicle pull directly in front of him with its lights but not its sirens activated. The police vehicle then reversed out and waved him through. A second police vehicle without its lights activated was blocking the westbound lanes North, so defendant continued north on Keating, took a left into the alley, drove to Cicero, and turned left to onto southbound Cicero.

¶ 23    Defendant continued on Cicero past North and Hirsch, both of which have traffic lights but neither of which were red. When he reached Cicero and Division, he got into an accident, which he described as follows: "[T]he car [came] speeding up to the light and I was making a left-hand turn. I knew he wasn't going to be able to stop and all of a sudden he just swerved in my lane[.] *** I had to hit the brakes and I slid into him."

¶ 24    Defendant exited the Passat and walked to the sidewalk so he was out of traffic and because his hand had been injured when his airbag deployed. He did not see any police vehicles in his rearview mirror, see or hear emergency equipment, or know the police were pursuing him.

¶ 25    In rebuttal, Dineen testified that he received Czarniecki's call for assistance and drove his marked police vehicle to west on North Avenue to its intersection with Keating. At the time, he was in full uniform. When he arrived at Keating and North, he had a brief conversation with Czarniecki and then saw the Passat facing north on Keating.

¶ 26    Dineen made a left turn from North onto Keating, approached the Passat, activated his lights, and verbally commanded the driver, who he identified in court as defendant, to stop through his open driver's-side window. Defendant made an abrupt right turn and fled east on North. Dineen denied ever waving defendant through the intersection.

¶ 27    In addition, the State, pursuant to *People v. Montgomery*, 47 Ill. 2d 510 (1971), admitted certified copies of defendant's 2016 conviction for aggravated fleeing and eluding and 2008 convictions for residential burglary and burglary.

¶ 28    The court found defendant guilty of counts I and III and not guilty of counts II and IV. Defendant *pro se* filed a "motion for ineffective assistance of counsel" and defense counsel filed a motion for new trial. The court conducted a preliminary inquiry into defendant's *pro se* motion

pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), asking questions of both defendant and defense counsel to ascertain the factual bases for defendant's claims. The court denied the *pro se* motion, finding defendant's allegations did not warrant the appointment of new counsel. The court then denied the motion for new trial.

¶ 29    At sentencing, defendant informed the court he wished to represent himself and, after admonishing defendant, the court allowed defense counsel leave to withdraw. Defendant also *pro se* filed a "motion for State's discovery" and a "motion for reconsideration/finding of guilt/challenge sufficiency of the evidence, new trial." Defense counsel tendered the State's discovery to defendant before being given leave to withdraw. The court denied defendant's "motion for reconsideration."

¶ 30    The State entered a certified copy of defendant's 2016 conviction for aggravated fleeing and eluding. The court merged count III into count I, found defendant was eligible to be sentenced to an extended term based on his criminal history, and sentenced him to 6½ years' imprisonment. Defendant filed a motion to reconsider sentence, which the court denied. This appeal followed.

¶ 31    On appeal, defendant contends the State failed to prove his guilt beyond a reasonable doubt. Specifically, he argues the State failed to elicit any evidence that he disobeyed two or more "official traffic control devices" as that term is defined by the Code. Therefore, he maintains his conviction should be reduced from aggravated fleeing and eluding to misdemeanor fleeing and eluding.

¶ 32    When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact that the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of the decision. *Id.* However, the trier of fact need not disregard inferences which normally flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 33 Section 11-204 of the Code provides that a person commits the offense of misdemeanor fleeing and eluding when he, after having been given a visual or audible signal by a police officer directing him to bring his vehicle to a stop, willfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer. 625 ILCS 5/11-204(a) (West 2016). As charged here, section 11-204.1 of the Code provides that a defendant commits the offense of aggravated fleeing and eluding when he commits the offense of misdemeanor fleeing and eluding and, in doing so, disobeys two or more "official traffic control devices." *Id.* § 11-204.1(a)(4). Section 1-154 of the Code defines "official traffic-control devices" as follows: "All signs, signals, markings, and devices which conform with the State Manual and not inconsistent with this Act placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic." *Id.* § 1-154.

¶ 34    As noted above, defendant does not dispute that he committed the misdemeanor offense of fleeing. Rather, he argues the State failed to prove he disobeyed two or more "official traffic control devices" while fleeing from the officers. According to defendant, the only evidence in the record was that he "ran" two red lights but the State failed to elicit any evidence that those two lights were "placed or erected by authority of a public body or official having jurisdiction." See *id.*

¶ 35    After viewing the evidence in the light most favorable to the State and drawing all reasonable inferences therefrom in its favor, we conclude a rational trier of fact could have found the State proved defendant disobeyed two or more official traffic control devices. First, we note section 11-305(d) of the Code states as follows:

> "Whenever any official traffic-control device is placed *** in position approximately conforming to the requirements of this Act and purports to conform to the lawful requirements pertaining to such device, such device shall be presumed to have been so placed or held by the official act or direction of lawful authority, and comply with the requirements of [the Code], unless the contrary [is] established by competent evidence." 625 ILCS 5/11-305(d) (West 2016).

Here, Officer Czarniecki testified that defendant drove through red lights at Cicero's intersections with North and Hirsch. Chaplin confirmed that defendant drove through a red light at the intersection of North and Cicero. Moreover, we note defendant testified there were "traffic lights" at Cicero's intersections with North and Hirsch. In addition to the testimonial evidence, the State also presented footage from Lopez's in-car video-recording equipment. That footage shows stoplights at Cicero's intersections with North and Hirsch, both of which appear ordinary and are

controlling traffic, and neither of which appears to be irregularly positioned. In light of this evidence and the statutory presumption contained in section 11-305(d), the trial court could rationally conclude the red lights that defendant disobeyed were "official traffic control devices" as that term is defined in the Code. See *id.*; *Ross*, 229 Ill. 2d at 272. Accordingly, the evidence presented was sufficient to sustain defendant's conviction beyond a reasonable doubt.

¶ 36    In reaching this conclusion, we are not persuaded by defendant's argument that the evidence was insufficient because Czarniecki admitted on cross-examination that, though he issued multiple traffic tickets to defendant after the pursuit, he issued only one ticket based on defendant's failure to stop at a red light at North and Cicero. However, Czarniecki testified that defendant also drove through a red light at Hirsch and Cicero. The trial court, as trier of fact, was tasked with resolving this purported conflict in the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). The court did so in favor of the State, and we may not second guess the court's judgment. See *id.*

¶ 37    Defendant, relying on *People v. Murdock*, 321 Ill. App. 3d 175 (2001), and *People v. Lipscomb*, 2013 IL App (1st) 120530, also argues that, in other cases where defendants have challenged the sufficiency of the evidence to establish their convictions for aggravated fleeing and eluding, this court has required specific proof of each element of the offense. *Murdock* and *Lipscomb* are inapposite. Neither case involved the application of the statutory definition of "official traffic control device."

¶ 38    In sum, when the evidence is viewed in the light most favorable to the State, a rational trier of fact could find defendant disobeyed two or more official traffic control devices while fleeing

from the officers. Accordingly, we affirm defendant's conviction for aggravated fleeing and eluding.

¶ 39    For the reasons stated, we affirm the trial court's judgment.

¶ 40    Affirmed.