2024 IL App (1st) 221192-U

FIFTH DIVISION
March 1, 2024

No. 1-22-1192

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 9585 (01) |
| | ) | |
| DONTAY ADAMS, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed where any error by the trial court in admitting his prior conviction for aggravated battery of a police officer for impeachment purposes was harmless.

¶ 2    Following a jury trial, defendant Dontay Adams was found guilty of possession of a controlled substance containing less than 15 grams of cocaine (720 ILCS 570/402(c) (West 2018)) and sentenced to 3 years in prison. On appeal, Mr. Adams contends that the trial court erred by allowing the introduction of his prior conviction for aggravated battery of a police officer, which he argues was not probative of his credibility. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Mr. Adams was charged by information with one count of possession of a controlled substance arising from an incident on February 19, 2019.

¶ 5     Prior to trial, the State filed a motion *in limine* asking for leave of court, should Mr. Adams testify, to introduce evidence regarding his three prior convictions, pursuant to *People v. Montgomery*, 47 Ill. 2d 510 (1971). The State sought the admission of Mr. Adams's 2013 conviction for aggravated battery of a police officer, for which he was sentenced to six years in prison, and 2009 and 2011 convictions for the manufacture or delivery of a controlled substance.

¶ 6     At the hearing on the motion, defense counsel argued that the aggravated battery conviction was nine years old and dissimilar to Mr. Adams's present case, such that its introduction at trial would be more prejudicial than probative of Mr. Adams's guilt. The trial court found that the aggravated battery conviction was punishable by imprisonment exceeding one year and had occurred within 10 years of trial and concluded that "the probative value of the evidence [was] not substantially outweighed by the danger of unfair prejudice." It ruled that the 2013 conviction could be introduced for impeachment purposes only if Mr. Adams chose to testify. The trial court barred the introduction of Mr. Adams's 2009 and 2011 convictions because the State did not present evidence that those convictions occurred within the last 10 years.

¶ 7     At trial, Chicago police officer Danilo Loza testified that on February 19, 2019, he was dressed in civilian clothing in an unmarked vehicle patrolling near Laramie Avenue and Ferdinand Street in Chicago. There, he saw Mr. Adams, whom he identified in court, yelling "rocks, rocks." Officer Loza understood rocks to be a "street term for crack cocaine." Officer Loza exited the vehicle and approached Mr. Adams, who walked in the opposite direction. Officer Loza followed Mr. Adams and arrested him. At trial he identified a photograph and map of the area, describing

where he had approached and arrested Mr. Adams. The photograph and map are part of the record on appeal and have been viewed by this court.

¶ 8    After arresting Mr. Adams, Officer Loza patted him down for weapons and recovered a bag from within the lining of Mr. Adams's sweater. Officer Loza explained that he "thread[ed]" the bag from "a hole at the beginning of the lining." The bag was green and contained approximately 12 smaller bags with a "white rock like substance" that he suspected was crack cocaine. Officer Loza inventoried the item and sent it to the Illinois State Police for testing.

¶ 9    Officer Loza wore a body camera, which he activated during the interaction with Mr. Adams. Footage from the body camera was published to the jury and narrated by Officer Loza. That footage depicts Officer Loza manipulating an object inside Mr. Adams's sweater with his hands and removing it from a small hole near the zipper; the object is a small green bag containing light colored objects.

¶ 10    Forensic scientist Martin Palomo testified that he weighed and tested the object recovered by Officer Loza, which was comprised of 12 green Ziploc bags. Eight items from the bags were found to be in total "1.1 grams of rock like substance" containing cocaine.

¶ 11    Mr. Adams testified in his own defense. He had been evaluated for fitness before trial and the parties agreed that there was no issue regarding his fitness to stand trial. No claim is raised regarding that on appeal.

¶ 12    Mr. Adams began, "just to get [it] out of the way," by introducing himself as "Jesus Christ, the son of God, the Messiah." When the court said, "[a]nd so you have expressed a religious belief" and asked Mr. Adams, "You don't actually believe you're the son of God," Mr. Adams responded "No, *** I really can prove it." When defense counsel asked him if he was "out there that day yelling rocks, rocks to passing vehicles," Mr. Adams's response was: "No. That stage is—I don't

know—I don't—no, no." He agreed with counsel's statement that in 2013 he was convicted for an incident of aggravated battery of a police officer.

¶ 13    On cross-examination, Mr. Adams stated that he recalled an officer removing a bag containing smaller bags from inside his hoodie. The officers informed Mr. Adams that the bags contained crack cocaine, but Mr. Adams was unsure of that because he did not use crack cocaine. Mr. Adams understood that "rock" was a street term for crack, but he believed that "a rock is really God." When the State asked Mr. Adams what his job was, he said, "My job is to preach the Word, get the truth out." When asked what work he did "for money," Mr. Adams stated he "had a straight robbery, drugs." When the State responded with, "I'm sorry?" Mr. Adams said simply "Drugs." When asked to explain, he said, "Exactly like I guess they saying happened, but I was manipulated, you know, by the devil and basically entrapment." When asked if he sold drugs, Mr. Adams said, "I was given drugs to sell I guess, yes." And when asked if he was given crack cocaine to sell on February 19, 2019, he said, "Yes."

¶ 14    On redirect examination, Mr. Adams testified that "somebody" gave him the sweatshirt he was wearing the day he was arrested, that he had possessed the sweatshirt for "weeks, months," and that he was unaware that anything was inside the lining of the sweatshirt. Mr. Adams explained that he wore clothes that other people gave him because he was living on the streets when he was arrested.

¶ 15    Following closing arguments, the court instructed the jury that "[e]vidence that a witness has been convicted of an offense may be considered by you only as it may affect the believability of the witness."

¶ 16    The jury found Mr. Adams guilty of possession of a controlled substance containing less than 15 grams of cocaine.

¶ 17 Defense counsel filed a motion for a new trial, arguing that Mr. Adams was denied due process where the court allowed introduction of his 2013 conviction for aggravated battery of a police officer, a "much more serious" offense than the one he was being tried for, and that this was "highly prejudicial" to him. Further, counsel argued that the crime of aggravated battery of a police officer "[did] not speak to a defendant's general truth or veracity as a witness," and was more prejudicial than probative as to the instant offense. The court denied Mr. Adams's motion after a hearing, noting that its ruling allowing the conviction to impeach Mr. Adams's testimony was appropriate.

¶ 18 The matter proceeded to sentencing, and the court imposed a sentence of three years in prison. The court denied Mr. Adams's motion to reconsider his sentence.

¶ 19                                   II. JURISDICTION

¶ 20 Mr. Adams's motion to reconsider was denied on July 28, 2022, and he timely filed his notice of appeal that same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb 6, 2013) and 606 (eff. July 1, 2017), governing appeals from final judgments in criminal cases.

¶ 21                                   III. ANALYSIS

¶ 22 On appeal, Mr. Adams argues that the trial court erred by allowing the introduction of his prior conviction for aggravated battery of a police officer. According to Mr. Adams, the conviction was more prejudicial than probative of his credibility, as it did not involve dishonesty, thus rendering it inadmissible for impeachment purposes.

¶ 23 Under Illinois Rule of Evidence 609, evidence that a witness has been convicted of a crime may be used to attack the credibility of the witness under certain circumstances. Ill. R. Evid. 609

(eff. Jan. 6, 2015). Rule 609 is based on our supreme court's decision in *Montgomery*, 47 Ill. 2d at 516, and is often referred to as the *Montgomery* rule. Under that rule, evidence of a witness's prior conviction may be admissible to attack his or her credibility if it "(1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the court determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." Ill. R. Evid. 609(a) (eff. Jan. 6, 2015).

¶ 24 This last factor requires the court to perform a balancing test, where the court should consider, among other factors, "the nature of the prior conviction, the nearness or remoteness of that crime to the present charge, the subsequent career of the person, the length of the witness'[s] criminal record, and whether the crime was similar to the one charged." *People v. Mullins*, 242 Ill. 2d 1, 14-15 (2011).

¶ 25 Rule 609 also provides that a conviction is not admissible if more than 10 years have elapsed since the conviction or the date of the witness's release from confinement, whichever is later. Ill. R. Evid. 609 (b) (eff. Jan. 6, 2015)

¶ 26 The determination of whether a prior conviction is admissible for impeachment purposes is within the trial court's sound discretion, and this court reviews the lower court's ruling only for an abuse of that discretion. *People v. Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 79. A court abuses its discretion only "where its ruling is arbitrary or fanciful or where no reasonable person would agree with the court." *Id.*

¶ 27 Mr. Adams does not contest that his 2013 conviction for aggravated battery of a police officer was punishable by imprisonment of more than one year or that the conviction or his release

from confinement occurred within 10 years of the start of his trial. Mr. Adams argues, however, that the prejudicial potential of the evidence outweighed any probative value. Mr. Adams maintains that his aggravated battery conviction was unrelated to his credibility and points out that the trial court did not explain the relationship between that prior crime and the likelihood that he would lie on the witness stand.

¶ 28    While Mr. Adams's arguments have some persuasive appeal, they are largely foreclosed by binding decisions interpreting the *Montgomery* rule.

¶ 29    Our supreme court and Rule 609 itself both make clear that the trial court was not required to exclude this aggravated battery conviction from evidence solely because aggravated battery is not a crime of dishonesty. In *People v. Eddie Williams*, 161 Ill. 2d 1 (1994), our supreme court acknowledged that, in applying the *Montgomery* test, " 'acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity,' " while " '[a]cts of violence, on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity.' " *Eddie Williams*, 161 Ill. 2d at 37 (quoting *Gordon v. United States*, 383 F.2d 936 (D.C.Cir. 1967)).

¶ 30    However, in a more recent case, *People v. Frank Williams*, 173 Ill. 2d 48, 83 (1996), the supreme court referenced the *Eddie Williams* case and reaffirmed, as Rule 609 makes clear, that violent crimes *can* also satisfy the *Montgomery* test. *Frank Williams*, 173 Ill. 2d at 83. Indeed, in the *Frank Williams* case, our supreme court affirmed a conviction where, as in this case, the trial court allowed the defendant to be impeached with an aggravated battery conviction. *Id.* Our supreme court articulated its "continued adherence to the three-part test set forth in *Montgomery*," and pointed out that, under that test, crimes having nothing to do with dishonesty could be

admissible. *Id.*

¶ 31    While these cases would militate against a finding that the trial court here abused its discretion, even if Mr. Adams was able to demonstrate such an abuse, admission of this past conviction was, at most, harmless error. Our supreme court has made clear that the improper introduction of other-crimes evidence is harmless error when a defendant is neither prejudiced nor denied a fair trial based upon its admission. *People v. Nieves,* 193 Ill. 2d 513, 530, (2000). Mr. Adams's credibility was surely more (or at least equally) impacted by the garbled and at times equivocal answer he gave when asked if he was yelling "rocks, rocks" to passing cars on that date. Mr. Adams admitted during that testimony both that he sold drugs for a living and that he was indeed selling crack cocaine on February 19, 2019.

¶ 32    Moreover, any prejudicial impact in this case was mitigated by the fact that aggravated battery is quite different from the drug possession charge for which Mr. Adams was on trial. The aggravated battery conviction does not suggest a propensity to commit the crime charged. *Cf. Eddie Williams*, 161 Ill. 2d at 41 (noting that it "appeare[d]" that the defendant's past conviction for manslaughter was "offered and admitted as relevant to the question of [the] defendant's guilt" of the similar crime of murder). In addition, Mr. Adams does not dispute that the trial court properly instructed the jury that it was to consider the conviction only insofar as it affected "the believability of the witness." A jury "is presumed to follow the instruction that the court gives it." *People v. Williams*, 2015 IL App (1st) 130097, ¶ 52.

¶ 33    In light of all of this, any error in the admission of this past conviction did not impact the outcome at trial and was harmless.

¶ 34                              IV. CONCLUSION

¶ 35    Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.